UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JENNY P.[1], | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 4:22-cv-96 |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
|         Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Jenny P., on December 7, 2022. For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Jenny P., filed an application for Supplemental Security Income on October 19, 2020, alleging a disability onset date of September 24, 2020. (Tr. 13). The Disability Determination Bureau denied Jenny P.'s claims initially on March 10, 2021, and again upon reconsideration on July 9, 2021. (Tr. 82, 90). Jenny P. subsequently filed a timely request for a hearing on July 29, 2021. (Tr. 95). A hearing was held via telephone on May 19, 2022, before Administrative Law Judge (ALJ) Charles Thorbjornsen. (Tr. 32-63). Vocational Expert (VE) Clifford Brady testified at the hearing. (Tr. 55-62). Following the hearing, the ALJ issued an unfavorable decision on June 1, 2022. (Tr. 11-19). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5).

At step one of the five-step sequential analysis for determining whether an individual is

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

disabled, the ALJ found that Jenny P. had a continuous 12-month period in which she did not engage in substantial gainful activity. (Tr. 13).

At step two, the ALJ determined that Jenny P. had the severe impairments of degenerative disc disease of the cervical and lumbar spine; lumbar radiculopathy; atrial fibrillation, status-post multiple SVT ablations; left shoulder degenerative joint disease; and headaches. (Tr. 13).

At step three, the ALJ concluded that Jenny P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). The ALJ found that no medical evidence reflected diagnostic findings that satisfied any listed impairment. (Tr. 13-14).

After consideration of the entire record, the ALJ then assessed Jenny P.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8- hour workday. The claimant can occasionally reach overhead to the left; and frequently reach in all other directions to the left. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have no concentrated exposure to work at unprotected heights or around moving mechanical parts. The claimant can have no concentrated exposure to wetness, extreme cold, extreme heat, or vibration. The claimant is limited to no more than a moderate noise work environment.

(Tr. 14). The ALJ found that Jenny P.'s medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. (Tr. 17). That said, the ALJ concluded that Jenny P.'s statements relating to the intensity, persistence, and limiting effects of the symptoms conflicted with the medical evidence and other evidence in the record. (Tr. 17).

At step four, the ALJ found that Jenny P. could perform past relevant work as a fast-food manager, which did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (Tr. 18). The ALJ also found that jobs existed in significant numbers in the national economy that Jenny P. could perform. (Tr. 19). Consequently, the ALJ found that Jenny P. had not been under a disability, as defined in the Social Security Act, since September 24, 2020. (Tr. 20).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* **Bates**, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). Yet "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel. Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920.** The ALJ first considers whether the claimant is employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b).** If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; see ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).** That said, if the claimant shows that her impairment is so severe that she cannot engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, considering her age, education, job experience, and functional capacity to

4

work, is able to perform other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion about job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Jenny P. has requested that the court remand this matter for additional proceedings. In her appeal, Jenny P. offers three arguments in favor of remand. First, she contends that the ALJ erred in finding that she could perform past relevant work as a fast-food manager because it would require her to use sharp objects to cut things and she used blood thinners. Second, Jenny P. argues that the ALJ ignored evidence favorable to her and his decision was not supported by substantial evidence. Third, Jenny P. claims the ALJ erred by failing to include any limitations related to her being off-task due to her migraines or absenteeism in the RFC finding.

1. **Past Relevant Work**

Jenny P. first argues that the ALJ erred in determining that she could perform past relevant work as a fast-food manager because she was on blood thinners and working as a fast-food manager involved working with sharp objects. To determine whether a claimant is physically capable of returning to her former work, the ALJ must determine the demands of that work in relation to the claimant's present physical capacities. **Strittmatter v. Schweiker**, 729 F.2d 507, 509 (7th Cir. 1984). Although Jenny P. had the burden at step four to establish that she could not return to her past relevant work, the ALJ still must make factual findings that supported his conclusion. **Briscoe ex rel. Taylor v. Barnhart,** 425 F.3d 345, 352 (7th Cir. 2005).

It is true that the VE testified that being on blood thinners would probably preclude Jenny P.'s past work as a fast-food manager. (Tr. 57-58). In any event, the ALJ then made an alternative step five finding that, based on Jenny P.'s RFC and vocational factors, she could perform other jobs existing in significant numbers in the economy. (Tr. 19-20). The VE testified that he did not believe that being on blood thinners "would really affect those jobs or the numbers." (Tr. 58). Jenny P. does not challenge the ALJ's alternative step five finding. Thus, even though the ALJ erred in concluding that she could perform past work as a fast-food manager, it does not warrant remand because he rectified the error with an alternative step five finding.

2. **Evidence of Migraines**

Jenny P. argues that the ALJ mischaracterized the duration of her headaches when he determined that she showed an improvement after having teeth extracted but that he ignored favorable evidence that could have supported a finding of disability. An ALJ must fairly evaluate the record. "[A]lthough the ALJ need not discuss every piece of evidence in the record," the ALJ may not ignore an entire line of evidence contrary to the ruling. ***Golembiewski v. Barnhart***, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *accord* ***Thomas v. Colvin***, 745 F.3d 802, 806 (7th Cir. 2014). An ALJ also may not cherry-pick from the evidence and select only those facts which support his conclusion. ***Scrogham v. Colvin***, 765 F.3d 685, 699 (7th Cir. 2014) (holding that the ALJ's "apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal").

Here, the ALJ's decision mischaracterized the testimony Jenny P. provided during the evidentiary hearing. In his decision, the ALJ noted that Jenny P. had "headaches around 3-4

times a week, but they only last a couple of minutes." (Tr. 15). The ALJ explained that Jenny P.'s headaches decreased once she had teeth extracted and that she admitted to no longer taking medication for her migraines. (Tr. 17). Yet at the hearing, Jenny P. qualified this statement by indicating that she no longer was taking prescribed migraine medication, not because her symptoms subsided, but because "the side effects [of the medication] were worse than the migraines." (Tr. 43). Jenny P. then clarified that she still took Excedrin Migraine, an over-the-counter medication, to help her symptoms. (Tr. 44). Further, Jenny P. testified that she experienced migraines 3-4 times a week which lasted from "four or five minutes up *to almost an hour*." (Tr. 45). When asked by the ALJ, Jenny P. stated that the migraines that last up to an hour occur around two days a week and that she is fatigued for another half hour to an hour after she takes Excedrin for the pain. (Tr. 45-46).

The ALJ's decision diminished the duration of Jenny P.'s migraines and her reasons for not taking prescribed medication for the symptoms. The ALJ's decision only included that Jenny P. experienced headaches 3-4 times a week, they lasted a couple of minutes, and she no longer took medication for it. (Tr. 17). That finding was contrary to the claimant's testimony. The ALJ even summarized at the hearing that "for an hour and a half to two hours on those two days a week that you're having those headaches, you're out of commission." (Tr. 46). The VE offered testimony that if a person was completely off-task for a period of one to two hours at a time two days a week because of migraine pain then such limitations would be preclusive. (Tr. 62).

Without the ALJ's mischaracterization of Jenny P.'s testimony, the ALJ may have rendered a different conclusion. The ALJ did not address why he rejected Jenny P.'s testimony and he failed to build a logical bridge to support his conclusion. The error was not harmless and requires remand.

7

### 3. Limitations Related to Being Off-Task or Absenteeism in the RFC

Jenny P. argues that the ALJ erred in failing to include any limitations related to being off-task or absenteeism in the RFC determination. Because remand is necessary on other grounds, the court need not address this argument. The ALJ will be able to address this argument on remand.

*Conclusion*

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 6th day of September 2023.

/s/ Andrew P. Rodovich  
United States Magistrate Judge